UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICHARD LANGLEY                    CIVIL ACTION NO. 04-2257-P

versus                             JUDGE HICKS

WARDEN, ET AL.                     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Richard Langley ("Plaintiff") is a convicted prisoner housed at David Wade Correctional Center. He has been diagnosed with AIDS, hepatitis C and other health conditions. Plaintiff's principal complaints are that David Wade medical providers did not get him his AZT medication promptly upon arrival at the prison, that prison physician Dr. Pam Hearn refused to assign a duty status that would save Plaintiff from having to perform field work, and that Dr. Hearn refused to follow treatment prescribed by a specialist at a viral disease clinic.

Before the court are motions for summary judgment filed by Plaintiff (Doc. 20) and by Defendants (Doc. 29). Both parties have submitted affidavits or statements sworn to pursuant to 28 U.S.C. § 1746, as well as prison medical records. After reviewing the evidence, and for the reasons that follow, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted, thus dismissing the case.

**The Allegations**

Plaintiff's allegations are set forth in his original complaint and a "supplemental brief" (Doc. 5) that is, in effect, an amended complaint. Most of the allegations have been presented in the form of competent summary judgment evidence, either in the verified complaint or the brief in support of Plaintiff's Motion for Summary Judgment (Doc. 20, pp. 13-32) that was certified as true pursuant to Section 1746. Huckabay v. Moore, 142 F.3d 233, n. 6 (5th Cir. 1998) (verified complaint may be treated as if in an affidavit on summary judgment if the asserted facts meet the requirements of Fed. R. Civ. P. 56(e)); Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003) (facts sworn to under Section 1746 have been recognized as competent summary judgment evidence).

Plaintiff represents he was transferred to David Wade from Angola on April 5, 2004. He claims that he was denied his AZT medication that first day and did not receive a dose until 4:30 p.m. the next day. Plaintiff saw Dr. Hearn on April 9, 2004 and showed her a copy of his duty status from Angola, which Plaintiff said the specialist at that prison had ordered and that permitted Plaintiff to work but at jobs that would not weaken his health. Dr. Hearn assigned Plaintiff regular duty status.

Plaintiff alleges that he was assigned to work in the field and that the only way he could endure being forced to perform such strenuous work was to stop taking his AZT medication, which drains his strength. Plaintiff alleges that he was often sick and on one occasion contracted bronchitis because of dust he was exposed to working in the field.

Plaintiff alleges and testifies that he was sent to the Viral Disease Clinic in Shreveport and examined by a physician who specializes in HIV and AIDS care. Plaintiff represents that he told the physician that he had stopped taking his medicine because of his inability to perform his assigned job when taking the medication. Plaintiff represents that the physician wrote orders for Plaintiff to be "given a duty status," placed on a double portion diet, and provided Ensure protein drink three times a day. Plaintiff states that Dr. Hearn "refused" all of these orders and said that Plaintiff did not need any of those things.

**Defendants' Evidence**

Defendants offer Plaintiff's medical records from David Wade and affidavits from Dr. Hearn and Classification Director Karen Hoyle. Ms. Hoyle explains that the prison medical staff completes a medical profile on each inmate prior to inmate orientation, at which time a classification board assigns a job to the inmate consistent with the duty status found by the medical staff. The staff issued Plaintiff a regular duty status, and the classification board assigned Plaintiff jobs consistent with that status. There have been a number of changes in Plaintiff's job assignment during the relevant time. Plaintiff was initially assigned to a compound crew, but his assignment was changed to a field crew as the result of a disciplinary board action. Plaintiff was later assigned to attend school, which was a promotion from field work to educational training. Plaintiff was eventually reassigned to a field crew, again because of a disciplinary board action. Plaintiff remained assigned to the field crew through the filing of this action. Doc. 29, Exhibit 1.

Dr. Hearn testifies that she has been employed as a physician at David Wade for approximately eighteen years and has provided medical care for inmates diagnosed with AIDS for more than seventeen years. She describes in detail the information that she reviewed about Plaintiff's medical condition and medications before recommending a regular work duty status for him upon admission. Dr. Hearn testifies that Plaintiff was given his medication the day after he arrived at David Wade, and medical staff stressed the importance that Plaintiff report for his medication. Plaintiff nonetheless failed to report for medication on the next day.

Between the time Plaintiff arrived at David Wade in April 2004 and when he filed this civil action in November 2004, he was seen several times by Dr. Hearn and other members of the medical staff. Dr. Hearn summarizes in her affidavit (Doc. 29, Exhibit 2) the many visits. Plaintiff was examined on those occasions, and his vital statistics were noted in the records. He was often prescribed medication and other treatment for problems including headache, dizziness, coughing, back pain, spider bite, wasp sting, pimple on the ear, sore throat, rash and dental pain. Plaintiff was also transported to the Viral Disease Clinic in Shreveport at least four times during that period. None of the records from the Viral Disease Clinic submitted by Defendants include the orders Plaintiff testifies to in his affidavit. Rather, they include notations such as: "Patient refuses to take any medications, He was explained about the risk and benefit and he understands but still refuses."

Dr. Hearn testifies that she assessed Plaintiff's medical condition upon his entry at the prison. The intake health screening found Plaintiff to be physically capable of working without restrictions, so she issued a regular work duty status. When Plaintiff requested medical treatment a few days later, Dr. Hearn says she performed a duty status review and concluded again that Plaintiff should receive a regular work duty status. She explains that she did not decide what particular job Plaintiff should be assigned to within the scope of that status, as that task is performed by the classification board. Dr. Hearn testifies that she found no medical records to indicate that David Wade medical personnel failed to provide Plaintiff with appropriate medical treatment. She did find, however, several indications that Plaintiff had failed or refused to take his medication. Dr. Hearn denies that she was ever deliberately indifferent to Plaintiff's need for medical care and that all medical attention provided to Plaintiff was appropriate for his medical condition at the time it was issued.

**The Constitution and Inmate Medical Care**

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional

claim for indifference to medical needs. <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997).

**The Claims against Dr. Hearn**

Plaintiff makes general complaints about the prison medical staff, but Section 1983 liability may be imposed only on an individual as a consequence of acts that individual performed or for which she is responsible under Section 1983 jurisprudence. Dr. Hearn is the only named defendant who was personally involved in the medical decisions about which Plaintiff complains. There are conflicts in the summary judgment evidence about what Dr. Hearn did, and those conflicts must be resolved in Plaintiff's favor for purposes of this motion.

Plaintiff contends there was a short delay in him being provided medication upon his arrival at the prison, but there are no facts to suggest that Dr. Hearn (or any prison official) deliberately or with subjective recklessness caused that delay. There is also no evidence that Plaintiff suffered any harm as a result of the delay. Plaintiff admits that he later went several weeks without taking medication and, while that may not have been good for his health, it indicates that a one-day delay did not have such an effect on his health as to give rise to an Eighth Amendment cruel and unusual punishment claim. A delay in medical care can constitute an Eighth Amendment violation, but only if there is deliberate indifference behind the delay and the delay results in substantial harm. <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff's other complaints about Dr. Hearn regard his duty status assignment and Dr. Hearn's refusal to implement the alleged orders of the specialist. Dr. Hearn discussed in her affidavit how she reviewed Plaintiff's medical records and condition before assigning his duty status. Plaintiff obviously disagrees with that decision, but his mere disagreement with the physician's exercise of her medical judgment does not automatically give rise to a constitutional violation. Plaintiff might have grounds to assert a tort or medical malpractice claim in a state court, but there are no facts to show that Dr. Hearn's considered duty status assignment was made in deliberate indifference to a serious medical need.

Dr. Hearn did not specifically address in her affidavit Plaintiff's allegation that the viral disease specialist recommended the duty status change, drink supplement and double-portion meals. There is no evidence, beyond Plaintiff's assertions, to support this contention, but Plaintiff has presented his contentions in the form of competent summary judgment evidence, so they must be addressed. Assuming those allegations to be true, they do not give rise to a genuine issue of material fact. There is ample other evidence in the record which shows that Dr. Hearn was responsive to the many medical requests made by Plaintiff and afforded consideration to his requests for various forms of medical care. That Dr. Hearn may not have agreed with the specialists about the proper care does not mean that the care she did provide was deliberately indifferent to a serious medical need.

A showing of deliberate indifference requires the inmate to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard

for any serious medical needs." <u>Domino v. Texas Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir.2001). Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under Section 1983. <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir.1999). The evidence, even when all conflicts are resolved in Plaintiff's favor, does not depict Dr. Hearn engaging in activity that would permit a finding that she ran afoul of this demanding standard.

**Other Defendants**

Plaintiff complains that Secretary Richard Stalder, Warden Venetia Michael, Deputy Warden Angie Huff and Nurse Debbie Scriber are also liable to him. The only allegations against those defendants in the complaint regard their handling of administrative grievances filed by Plaintiff in connection with his underlying claims. None of these defendants is alleged to have been personally involved in Plaintiff's medical care.

Plaintiff "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." <u>Geiger v. Jowers</u>, 404 F.3d 371, 373-74 (5th Cir. 2005). Defendants are also entitled to dismissal based on a lack of administrative exhaustion of any claims against them; the grievances filed by Plaintiff did not give fair notice from which a reasonable administrator would understand that Plaintiff was asking for a resolution of any claims he had against those defendants, as opposed to Dr. Hearn. <u>Johnson v. Johnson</u>, 385 F.3d 503, 522-23 (5th Cir. 2004) (describing the obligation to suitably identify a defendant in a grievance to result in PLRA exhaustion). Furthermore, supervisory officials over a large institution or state agency "cannot be expected to intervene personally in

response to every inmate letter they receive." <u>Johnson</u>, 385 F.3d at 526. Supervisors in this case reasonably responded to Plaintiff's complaints by relying upon the judgment of medical professionals who were personally involved in the inmate's care. That was a reasonable discharge of their duty to protect the inmates in their care, so they are entitled to qualified immunity. <u>Jones v. Livingston</u>, 2005 WL 3618316 (S. D. Tex. 2005) (applying <u>Johnson</u> to dismiss claims against a warden who relied upon the medical decisions of the prison physician).

**Conclusion**

The summary judgment evidence and applicable law lead to a recommendation that Defendants' motion for summary judgment be granted and the complaint be dismissed with prejudice. Defendants have requested a jury trial (Doc. 13, p. 5), so if this recommendation is not accepted and other motions do not resolve the case, the undersigned cannot hold a hearing pursuant to 28 U.S.C. § 636(b)(1)(B). Rather, a jury trial before an Article III judge will be necessary. <u>McAfee v. Martin</u>, 63 F.3d 436 (5th Cir. 1995).

Accordingly;

**IT IS RECOMMENDED** that **Plaintiff's Motion for Summary Judgment (Doc. 20)** be **denied** and that **Defendants' Motion for Summary Judgment (Doc. 29)** be **granted** and all claims against all defendants be **dismissed with prejudice**.

**<u>Objections</u>**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 30th day of June, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE